J-S47044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.S.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.G., III, NATURAL | : | |
| FATHER | : | No. 695 WDA 2018 |

Appeal from the Order Entered March 26, 2018
In the Court of Common Pleas of Jefferson County
Orphans' Court at No(s):  17A-2017 O.C.

BEFORE:   OLSON, MCLAUGHLIN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 19, 2018**

G.G., III (Father), appeals from the order entered March 26, 2018, in the Court of Common Pleas of Jefferson County, which granted the petition of B.S.S. (Mother) and G.S., II (Stepfather), and terminated involuntarily Father's parental rights to his minor daughter, B.S.G. (Child), born in December 2015.  We affirm.

We summarize the relevant factual and procedural history of this matter as follows.  Mother and Father were in a relationship for almost two years.  Prior to Child's birth, on October 21, 2015, Father pleaded guilty to delivery of a controlled substance, for which he received a sentence of state intermediate punishment.  Father served nearly one year in state prison before transferring to a drug and alcohol rehabilitation program in Pittsburgh in September 2016.  Father completed the program in November 2016 and continued serving his sentence at halfway houses in Pittsburgh and Erie.  In

_____

* Retired Senior Judge assigned to the Superior Court.

November 2017, Father returned home to Jefferson County and began residing with Child's paternal grandmother.

Father maintained a cordial relationship with Mother at the start of his criminal sentence, which allowed him to arrange occasional visits with Child. However, Father's relationship with Mother began to deteriorate in late 2016. This coincided with Mother's new romance with Stepfather. Father last visited with Child at a park in Jefferson County in April 2017. Father has not had any contact with Child since that time. Meanwhile, Mother and Stepfather married in October 2017.

On October 27, 2017, Mother and Stepfather filed a petition to terminate involuntarily Father's parental rights to Child.[1] The orphans' court conducted a termination hearing on February 15, 2018.[2] Following the hearing, on March 26, 2018, the court entered an order terminating Father's parental rights. Father timely filed a notice of appeal on April 24, 2018, along with a concise statement of errors complained of on appeal.

---

[1] Mother and Stepfather filed a petition for Stepfather to adopt Child that same day.

[2] The orphans' court appointed a guardian *ad litem* (GAL) to represent Child. Child turned three only two months prior to the hearing. Due to her age, it is clear that she was unable to express her preferred outcome in this case. Thus, the court's appointment of a GAL satisfied Child's right to counsel pursuant to 23 Pa.C.S. § 2313(a). **See In re T.S.**, ___ A.3d ___, 2018 WL 4001825 at *10 (Pa. filed August 22, 2018) (distinguishing two- and three-year-old children whose young age rendered them unable to form a "subjective, articulable preference" from "children as young as five or six years of age [who have] opinions which are entitled to weight in legal proceedings concerning their custody") (citing Pa.R.P.C. 1.14, Explanatory Comment 1).

Father now raises the following claim for our review. "Whether the [orphans'] court erred in terminating [Father's] parental rights where insufficient evidence was presented to meet the burden required under 23 Pa.C.S.[] §[]2511(a)." Father's Brief at 4 (unnecessary capitalization omitted).

We consider this claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond

between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The orphans' court terminated Father's parental rights pursuant to subsections 2511(a)(1) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

>> ***

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

In the instant matter, Father waived any claim regarding subsection 2511(b) by failing to include it in his statement of questions involved and concise statement of errors complained of on appeal. ***See In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]ssues not included in an appellant's

- 4 -

statement of questions involved and concise statement of errors complained of on appeal are waived."). Father also failed to develop any such claim in the argument section of his brief. *Id.* at 465-66 ("[T]his Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority."). Thus, we review only whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to subsection 2511(a)(1).[3]

To meet the requirements of subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The orphans' court must then consider the parent's explanation for his or her abandonment of the child, in addition to any post-abandonment contact. *Id.* (quoting *In re Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998)).

_____

[3] Even if Father had preserved a challenge to subsection 2511(b), it would be meritless. As discussed above, Father was serving a criminal sentence at the time of Child's birth in December 2015 and did not return to Jefferson County until November 2017. Child never lived with Father and visited with him on only a limited number of occasions. Father acknowledged during the hearing that he and Child do not share a bond. N.T., 2/15/2018, at 76. Conversely, Stepfather has served as a caregiver for Child since December 2016 and Child refers to him as "Dada." *Id.* at 22, 25. It is clear that Child and Father do not have a necessary and beneficial relationship at this time, and that terminating Father's parental rights will best serve Child's needs and welfare because it will allow her to be adopted and grow up in an intact family.

Our courts have emphasized that a parent does not perform parental duties by displaying a merely passive interest in the development of his or her child. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. **Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.**

*Id.* (citations omitted; emphasis added).

Of particular relevance to this appeal, incarceration does not relieve a parent of the obligation to perform parental duties. Our case law does not require that an incarcerated parent "perform the impossible." *Id.* at 857. However, that parent must utilize the resources available in prison to preserve a relationship with his or her child. *Id.* at 855; *see also In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

In the instant matter, the orphans' court found that Father failed to perform his parental duties for a period in excess of six months preceding the filing of the termination petition, and that he evidenced a settled purpose of relinquishing his parental rights. Orphans' Court Opinion, 3/26/2018, at 2 (unnumbered pages). The court acknowledged that Father's incarceration and

Mother's uncooperativeness served as obstacles limiting his ability to maintain a relationship with Child, but found that he failed to make sufficient efforts to overcome those obstacles. *Id.* at 3-4. The court found that Father had no contact with Child after his final visit in April 2017. *Id.* at 1. The court further reasoned that Father could have written to Child, sent small gifts, or made additional inquiries about her well-being. *Id.* at 3. Moreover, the court found that "Father concentrated his efforts on his recovery from addiction, but in so doing he lost all contact with his daughter." *Id.* The court found Father's recovery efforts commendable, "but he cannot do so at the expense of his daughter" and found that this was a case of "too little, too late[.]" *Id.* at 4.

Father argues that he took whatever actions he could while incarcerated to perform his parental duties and blames Mother for impeding his efforts. Father's Brief at 8-12. Father insists that he found ways to visit with Child despite lacking a driver's license and a car, requested updates and pictures of Child from Mother, and provided limited financial support. *Id.* at 10. Father also insists that he purchased gifts for Child in December 2017, which Mother and Stepfather did not accept. *Id.* at 11.

Our review of the record supports the findings and conclusions of the orphans' court. During the termination hearing, Mother testified that Father's last visit with Child occurred on April 22, 2017, while Father testified that the visit occurred on June 22, 2017. N.T., 2/15/2018, at 4, 48. The orphans' court accepted Mother's version of events and found that the visit occurred in April. Orphans' Court Opinion, 3/26/2018, at 1 (unnumbered pages). Thus,

Father had no contact with Child during the six months immediately preceding the filing of the termination petition on October 27, 2017. *See T.S.M.*, 71 A.3d at 267 ("The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.") (citation and internal quotation marks omitted).

Moreover, there is no indication in the record that Father made efforts to arrange contact with Child during the six months at issue. Father lived at halfway houses in Pittsburgh and Erie throughout the relevant six months due to his criminal sentence. While Father's sentence was an obstacle limiting his ability to contact Child, he did nothing to overcome that obstacle. Mother testified that Father did not request or attempt to schedule any additional visits with Child after their final visit. N.T., 2/15/2018, at 6. Father did not dispute that aspect of Mother's testimony.

Further, the record supports the finding of the orphans' court that Father did little outside of visits to maintain a relationship with Child. Mother testified that Father did not send cards, letters, or gifts during the relevant six months.[4] *Id.* at 7. In addition, Father provided financial support to Mother only once. Father provided Mother with $60 in June 2017. *Id.* at 17.

_____

[4] While Father argues that he purchased gifts for Child in December 2017, the orphans' court was not at liberty to consider this information when reaching its decision. *See* 23 Pa.C.S. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.").

While Father entered into evidence copies of text messages from him to Mother, which show that he inquired about Child and asked for pictures during the relevant six months, that does not excuse the remainder of his conduct. *See* Respondent's Exhibit 1. Father's text messages show that he attempted to contact Mother about Child approximately once per month. He could have, and should have, done more. For example, Father could have filed a complaint for partial custody. This is especially true given Mother's responses to the text messages, and her occasional failures to respond, which made it apparent that she had no interest in helping Father maintain a relationship with Child. *See*, *e.g.*, *id.* at 3-4 ("I'm not going to send pictures when I take them. That's stuff that me, [Stepfather] and [Child] do as a family.… You know it would be so much better and easier if you just turned over the little right you have away.").

We sympathize with Father's situation and do not condone Mother's obstinate behavior in response to Father's efforts, their minimal nature notwithstanding, at maintaining a relationship with his daughter. Like the orphans' court, we commend Father for his efforts at maintaining sobriety. However, while those efforts are positive, they are not enough for Child who is growing and progressing with Mother and Stepfather.

> This case epitomizes why appellate courts must employ an abuse of discretion standard of review, as we are not in a position to make the close calls based on fact-specific determinations. Not only are our trial judges observing the parties during the hearing, … and have a longitudinal understanding of the case and the best interests of the individual child involved. Thus, we must defer to

the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan. Even if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Accordingly, the record is clear that Father failed or refused to perform parental duties during the six months preceding the filing of the termination petition on October 27, 2017. Father had no contact with Child and made no efforts to arrange contact. At best, he sent Mother sporadic text messages inquiring about Child or asking for pictures. While Father's criminal sentence, and Mother's uncooperativeness, were obstacles limiting his ability to perform parental duties, the fact remains that he did little to overcome those obstacles. Father's actions demonstrate a merely passive interest in Child. They do not demonstrate good faith interest and effort, nor do they demonstrate that he utilized all available resources to preserve his parental relationship. *See B.,N.M.*, 856 A.2d at 858-59 (terminating parental rights where father "sat idle for most of [c]hild's life, allowing [m]other and her spouse to perform all parental duties[, and, m]erely stating that he did not wish to have his parental rights terminated was insufficient to protect those rights without acting affirmatively to foster a parental relationship with [c]hild during his incarceration"). Therefore, we conclude that he is not entitled to relief.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Father's parental rights to Child, and we affirm the court's March 26, 2018 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/19/2018